ORB SMITH *v.* THE STATE.

(*Knoxville.* September Term, 1929.)

Opinion filed November 16, 1929.

676

SHEPHERD, CARDEN & CURRY, for plaintiff in error.

W. F. BARRY, JR., Assistant Attorney-General, for the State.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

On the evening of September 6, 1928, two small boys, Hershall Johnson and James Edward Johnson, were struck by an automobile, at the edge of a concrete road in the suburbs of Chattanooga. Hershall Johnson was killed and his brother was severely injured. As a result of this accident three indictments were returned against the plaintiff in error, Orb Smith; one for manslaughter for killing Hershall Johnson; one for an assault and battery committed upon James Edward Johnson; and a third for driving an automobile while under the influence of intoxicating liquor. There was a joint trial, with verdicts of guilty upon the three indictments, with separate punishment assessed upon each verdict. Motion for a new trial was overruled in each case, and from the sev-

eral judgments rendered, the plaintiff in error has appealed to this court.

The principal defense interposed is that the boys were not struck by the automobile driven by the plaintiff in error. The plaintiff in error did not testify, and it appears to us that the evidence abundantly establishes his guilt.

The concrete roadway at the scene of the accident was about sixty feet wide. Plaintiff in error was driving north. Upon the left side of the roadway was a small restaurant operated by Mrs. Peak. A sidewalk led from the roadway to this restaurant. Mrs. Peak testified that just before the accident the little boys, with a small wagon filled with coal, were in front of her restaurant. She testified that an automobile going north was driven off the edge of the concrete roadway and across her sidewalk at a rapid rate of speed.

Rowland Rose, a boy fourteen years of age, was across the street from the Peak restaurant. He testified that he knew the automobile of the plaintiff in error, a Cadillac roadster, having seen the plaintiff in error in it on that day. He saw the little boys coming out of the Peak restaurant, pulling their wagon full of coal, and testified that they were off the concrete and had proceeded about twenty-five feet south of the restaurant; that the automobile of the plaintiff in error left the concrete and struck the two boys, carrying one of them on the fender to a point in front of the restaurant. He did not undertake to identify the driver, but was positive in his identification of the Cadillac roadster. On cross-examination he testified that after striking the boys the Cadillac pulled across in front of another car coming south. He further stated that when the boy fell from the fender in front of the Peak restaurant, the

driver appeared to throw his car into gear and proceeded onward.

It was shown by a number of witnesses who were in automobiles that the Cadillac roadster swerved to the left side of the roadway at this point, and that the left wheels were off the concrete, raising a cloud of dust; that it was pulled back into the roadway just in front of a car proceeding south, the evidence being that the latter car was driven by Mr. Mackey Brown, with whom his wife was riding.

The record further shows, without material conflict, that a short distance north of the scene of the accident the Cadillac roadster was driven into a ditch, at which point the plaintiff in error was discovered leaning over on his steering wheel, apparently in a drunken stupor. The odor of whisky was plainly apparent to those who reached him at this time and a little later.

There is some conflict as to whether the headlights of this automobile were burning. The preponderance of the evidence is that the headlight on the right side was not burning, but that the left headlight was burning. When noticed after the accident this left headlight was pointing straight up, and efforts to restore it to its normal position were unsuccessful. The glass or lens of this headlight was missing, and a glass which fit it and which bore the Cadillac insignia was found in front of the Peak restaurant. The iron rod which extended from one headlight to the other, in front of the radiator, was bent, and there was an indentation in the radiator itself. These physical facts show clearly that the front of the automobile had struck something at the scene of the accident.

G. R. Jensen, who knew the plaintiff in error, drove the automobile from the point where it was in the ditch

to the latter's home. There is some suggestion that Jensen may have been driving the automobile at the time of the accident. One witness for the plaintiff in error testified that there were two men in the car just after the accident. We think, however, that the evidence overwhelmingly shows that the plaintiff in error was alone and was driving the car when the boys were struck.

The witnesses who described the course of the Cadillac automobile at the time of the accident did not see it strike the boys. Rowland Rose is the only witness who actually saw the boys when they were struck. There is, however, no impeachment of his testimony, and we think it conclusively corroborated by the testimony of the witnesses who described the movements of the automobile.

One witness for the plaintiff in error, C. A. Sparks, testified that at the time of the accident he was about 150 or 175 feet south of the Peak restaurant and saw the Cadillac roadster swerve out to the left and pass in front of the southbound automobile; that he saw the rear wheel of the southbound automobile pass over "one of the forms laying out in front of the door." From this it is argued that the car going south was the one which struck the boys. We do not think so. If the southbound automobile passed over one of the boys in the roadway, it must have been the boy who had fallen from the fender of the Cadillac roadster, as described by Rowland Rose. There is no contradiction of his testimony that the boys were not on the concrete at all when they were first struck, and the Cadillac roadster is the only automobile shown by any evidence to have been driven off the concrete.

Just a few minutes before the accident two officers of Hamilton County had seen the plaintiff in error get

in his automobile at a filling station and had not observed that he was drunk. They undertook to follow the plaintiff in error, however, because of the speed with which he drove when he left the filling station. When they reached his home, about fifteen or twenty minutes later, they described his condition as "limber drunk." It is argued that the plaintiff in error could not have driven the car at all in such condition, but it seems to us that it is reasonable to infer that the condition of the plaintiff in error was materially affected by the accident itself. There is nothing to indicate that he was so devoid of human sympathy as not to have been prostrated at the tragedy which his recklessness had brought about.

It is proven without controversy that at the time of the accident the automobile was being driven at a rate of speed much in excess of thirty miles an hour.

We, therefore, find no merit in the assignments of error that the evidence preponderates against the verdict.

It is contended for the plaintiff in error that the facts proven show a single transaction, involving a single criminal intent, and that his conviction for manslaughter is a bar to the conviction for the assault upon James Edward Johnson, and also a bar to the conviction for driving an automobile while drunk.

We think this contention must be sustained in so far as it is directed to the conviction for an assault. The facts proven do not suggest an actual intent or purpose to harm either of the two boys, and the injury to both was the result of the reckless and unlawful operation of his automobile by the plaintiff in error.

It is well settled that if a person kills or injures two persons at the same time, but with separate blows or separate shots, he may be prosecuted and convicted for

the assault committed upon each of his victims. The underlying principle is well stated in *Womack* v. *State*, 47 Tenn. (7 Cold.), 511, as that "if the physical acts of assault and killing are distinct, and the intention to kill one is an intention formed, and existing distinct from and independently of the intention to kill the other, the two acts cannot constitute a single offense of murder." The Court, in the case cited, recognized, however, that "a single felonious act may result in the death of two individuals," for which the offender may be indicted for the murder of one only, or may be indicted "for a single offense of murder in the act of slaying both."

The rule recognized by this court in *Womack* v. *State*, *supra*, is stated in 16 Corpus Juris, 283 (Criminal Law, par. 485), thus: "Although crimes are not usually identical if committed against different persons, yet by the weight of authority where the same act or stroke results in the death of two persons an acquittal or a conviction of the murder of one bars a subsequent prosecution for the killing of the other, because the killing is but one crime and cannot be divided."

In *Kannon* v. *State*, 78 Tenn. (10 Lea), 386, this court cited *Womack* v. *State*, *supra*, and *Fowler* v. *State*, 50 Tenn. (3 Heisk.), 154, for the proposition: "An indictment against a defendant for the murder of two persons would be good upon its face, for the murder may be committed in the same degree, by one and the same act."

The facts of this case bring it clearly within the rule above stated. The criminal intent present is an imputed disregard of the safety of all persons who might be in the way of the recklessly and unlawfully driven automobile, and no act or intent can be charged against the plaintiff in error as affecting either of the two injured boys to the exclusion of the other. The plaintiff in er-

ror was guilty of a single unlawful act with a single criminal intent, and, therefore, can only be punished for a single offense or crime.

■ This rule does not, however, apply to the case in which the plaintiff in error is charged with driving his automobile while under the influence of whisky. In *Dowdy* v. *State,* 158 Tenn., 364, this court cited previous decisions as observing the spirit as well as the letter of the law against double jeopardy and double punishment, holding that "acquittal or conviction in one of several related offenses resulting in the same transaction bars subsequent prosecution for the others," but expressly pointed out that the rule "does not extend to unrelated substantive offenses arising out of the same transaction," citing *State* v. *Ross,* 72 Tenn. (4 Lea), 444.

The offense of driving an automobile while under the influence of an intoxicant is not an ingredient of the offense of homicide committed by the reckless driving, and is an unrelated offense. The commission of the misdemeanor was complete, under the facts proven herein, before the homicide was committed and was continued thereafter. Cases holding that conviction for a homicide committed with a pistol unlawfully carried is no bar to a subsequent conviction for unlawfully carrying a pistol clearly support this distinction. *Parker* v. *State,* 81 Tenn., 225; *Heaton* v. *State,* 130 Tenn., 163.

■ The trial court made an order fixing a day certain for the trial of the plaintiff in error on the three indictments, the order having been entered eleven days before the date set. On the day fixed in the order the attorney then representing the plaintiff in error applied for a continuance for two weeks, which the trial judge denied. Thereupon the attorney for the plaintiff in er-

ror said: "I withdraw. I don't propose to be a party to it. I have had no time to prepare for trial." The trial judge treated this statement as an improper criticism of the action of the court, accepted the withdrawal of counsel, and appointed another attorney at law to represent the plaintiff in error. This occurrence appears to have taken place during the morning hours, and the trial was begun during the afternoon of the same day. There is no suggestion that the attorney appointed for the plaintiff in error by the court was not thoroughly qualified to represent the plaintiff in error. Counsel prosecuting the appeal came into the case after the verdict, and made no such criticism. There was no application made to the trial judge for the postponement of the trial after the attorney was appointed by the court. The previous ruling denied a continuance on account of the absence of certain witnesses, and this ruling cannot be taken as a denial of a postponement if such was needed for the attorney appointed to prepare for the trial. Presumably all available witnesses had been placed under subpoena and were present at the trial. There is no showing to the contrary.

We would be loath to affirm the conviction of the plaintiff in error for manslaughter if the record contained any protest of the attorney appointed to defend, supported by any evidence offered on the hearing of the motion for a new trial that his unfamiliarity with the case had resulted in any prejudice to the plaintiff in error. No effort appears to have been made to show such prejudice, and, as before stated, the attorney appointed did not ask for further time in which to prepare. The examination of the witnesses disclosed by the bill of exceptions indicates that the knowledge of all witnesses was thoroughly test-

ed, and there is nothing to indicate that anything of advantage to the plaintiff in error was overlooked by the attorney who appeared for him.

█ The grounds of the application for a continuance which had been made by the attorney first appearing are not preserved in the record, and the action of the trial judge in denying the continuance must, therefore, be presumed to have been correct. *Hobbs* v. *State,* 121 Tenn., 413; *Temple* v. *State,* 127 Tenn., 429.

█ It appears from the record that the verdict was returned on October 4, 1928, and that the motion for a new trial was not submitted until October 27, more than three weeks elapsing. This was ample time for the plaintiff in error to have discovered and presented to the trial judge any evidence in his favor of which he was deprived by the unfamiliarity of his appointed counsel with the case. The fact that no such evidence was presented to the trial judge is convincing that nothing was overlooked.

We think, therefore, that it appears affirmatively from the record that no prejudice resulted to the plaintiff in error from the fact that he was represented by counsel appointed on the day the trial was begun; and when it further appears that the plaintiff in error went to trial without any request made to the court for time within which the appointed counsel might familiarize himself with the case, we find no justification for granting a new trial on the ground that no postponement of the trial was ordered.

█ On the hearing of the motion for a new trial, however, the plaintiff in error did offer affidavits of three men, as newly-discovered evidence, to the effect that they were walking along the road, some fifty or six-

ty yards south of the scene of the accident, and that their attention was attracted by the noise of two automobiles "which side swiped each other on the other side of the boulevard slightly north of said restaurant;" that the south-bound automobile, which was a Ford, then proceeded southward and struck a boy who was pulling a wagon; that they did not see the other boy who was injured at this time.

The affidavits recite that the fact of the presence of these men was not revealed to the plaintiff in error until after the verdict one of the affiants, Robert Hundley, disclosed the fact to the father of the plaintiff in error.

While the plaintiff in error would, of course, not be responsible for any lack of preparation for the trial on the part of the attorney who was appointed for him by the court on the day of the trial, it seems to us that in order to secure a new trial on account of this newly-discovered testimony, he must have presented to the trial judge his own affidavit and that of the attorney employed by him before the trial, representing to the court that the newly-discovered testimony was not available by the exercise of reasonable diligence on their part. No effort or attempt seems to have been made to comply with the rule that a showing of diligence must be made in order to justify the granting of a new trial for newly-discovered evidence, as that rule is clearly stated in *Ross* v. *State,* 130 Tenn., 387. Perhaps, under the circumstances of this case, the affidavit of counsel might have been waived by the trial judge, if the plaintiff in error himself had made any showing of diligence in the preparation for his trial.

We are persuaded, moreover, that the trial judge should not have granted a new trial because of these af-

fidavits. The evidence heard on the trial seems to negative the statement of the affidavits that one of the boys and the little wagon were on the concrete roadway, and the fact that the affiants do not claim to have seen the second boy clearly indicates that their testimony was not reliable. The case against the plaintiff in error is so strongly made out by the evidence introduced on the trial that the affidavits of Hundley and his companions are not sufficient to impeach the verdict to any degree.

█ It is further assigned as error that the trial judge erred in failing to instruct the jury on the amount of proof necessary to convict in cases depending upon circumstantial evidence.

Counsel recognize that such an instruction is not required in cases in which there is any direct evidence of guilt, and in which the prosecution is not dependent wholly and alone upon circumstantial evidence. *Barnards* v. *State,* 88 Tenn., 183, 225-227. But it is contended that in this case there is no direct evidence of guilt. To this contention we cannot agree. While it is true that Rowland Rose was not able to identify the plaintiff in error as the driver of the car which struck the two boys, the fact of his identity as such driver is abundantly proven by other direct evidence; and the evidence of guilt is none the less direct because the testimony identifying the car is supplemented by other testimony identifying the plaintiff in error as the driver of such car. We think, therefore, that the instruction upon circumstantial evidence was unnecessary, and that the rights of the plaintiff in error were sufficiently protected by the usual instruction that the burden was upon the State to prove his guilt beyond a reasonable doubt.

█ The instructions to the jury contained the state-

ment of the trial judge that the three cases were being tried jointly "by agreement of counsel entered into before this case was started." It is assigned as error that the three cases were thus put to the jury, because the record fails to contain any other reference to such an agreement.

We think the assignment of error without merit. The statement of the trial judge was made in the presence of the plaintiff in error and his attorney, and if no such agreement had in fact been made, it would be assumed from their failure to object at the time the jury were so instructed. It is the duty of counsel to make his protest seasonably and in time for correction whenever the trial judge in his charge to the jury "assumes a fact to be conceded, or makes an assumption in the charge based upon the course of the party in the court below." Acquiescence by the party in interest in such an assumption of the trial judge will preclude a subsequent objection after verdict. *Hosiery & Yarn Co.* v. *Napper,* 124 Tenn. 155, 170.

We find no reversible error on the record in so far as concerns the judgment rendered upon the conviction of the plaintiff in error for manslaughter, on account of the killing of Hershall Johnson, and the judgment rendered upon the conviction for driving an automobile while intoxicated, and these judgments will be affirmed.

For the reasons stated hereinabove, the judgment rendered upon the conviction for an assault upon James Edward Johnson will be reversed and set aside, and it is suggested that the attorney general enter a *nolle prosequi* in that case.

The plaintiff in error will pay the costs.