**STATE of Tennessee,
Plaintiff-Respondent,**

v.

**Roy Lee IRVIN, Defendant-Petitioner.**

Supreme Court of Tennessee.

July 28, 1980.

William M. Leech, Jr., Atty. Gen., William P. Sizer, Asst. Atty. Gen., Nashville, Arzo Carson, Dist. Atty. Gen., Huntsville, Jeff Hall, Asst. Dist. Atty. Gen., Huntsville, for plaintiff-respondent.

K. David Myers, Maynardville, W. G. Harrell, Jr., Tazewell, for defendant-petitioner.

OPINION

HARBISON, Justice.

Although other issues were involved at the trial and in the Court of Criminal Appeals, this Court granted certiorari to consider the single issue of whether multiple convictions for homicide may stand where more than one death results from a single automobile accident.

As pointed out by petitioner, Tennessee has for many years aligned itself with a small minority of states in holding that there can be only one conviction under these circumstances. Upon re-examining prior decisions in this state, we are of the opinion that they should be modified or overruled. We have concluded that the majority view is more sound from the standpoint both of logic and of analysis.

The earliest Tennessee cases on this subject developed from questions having to do with criminal pleading and the form of indictment. Later cases relied upon a fic-

tional concept of a single criminal intent. The cases involving vehicular homicide, however, are difficult to reconcile with decisions relating to other types of offenses involving multiple victims, as well as representing an older and minority view which has been rejected by all but a few courts which have had occasion to consider the subject in recent years.

Although there were disputed issues of fact, at the trial material evidence was introduced from which the jury found that the petitioner, while driving under the influence of alcohol, crossed the center line of a highway and collided with an oncoming automobile. Four persons in the other vehicle were killed, as was a passenger riding with petitioner.

Five separate indictments for second-degree murder were returned against petitioner. All of the cases were consolidated for trial, and the jury found petitioner guilty of murder in the second degree with respect to each of the four victims in the other vehicle and of involuntary manslaughter with respect to his passenger. Separate sentences were imposed in each case, all to run concurrently. The Court of Criminal Appeals affirmed and, as stated, this Court granted certiorari on the single issue stated above.

It is correctly pointed out by petitioner that this Court, in two cases involving vehicular homicide and in a third involving assault and battery with a vehicle, has held that only a single conviction could stand, even though there were multiple victims in the collisions under consideration.

The first of these cases, generally cited as the leading opinion in this state on the subject, was *Smith v. State*, 159 Tenn. 674, 21 S.W.2d 400 (1929). There the operator of an automobile struck two young pedestrians, killing one and injuring the other. He was separately indicted for these offenses, and verdicts of manslaughter and of assault and battery were returned. Reversing, this Court held that the facts showed "a single transaction, involving a single criminal intent . . ." and that the conviction for manslaughter of one of the victims was a bar to the action for assault and battery upon the other. The Court said:

"The facts proven do not suggest an actual intent or purpose to harm either of the two boys, and the injury to both was the result of the reckless and unlawful operation of his automobile by the plaintiff in error." 159 Tenn. at 681, 21 S.W.2d at 402.

The Court relied upon two earlier cases, *Womack v. State*, 47 Tenn. 508 (1870) and *Kannon v. State*, 78 Tenn. 386 (1882). Those cases, however, turned upon the form of criminal pleading. In each case the defendant was charged with the murder of two individuals in a single count of a single indictment. The evidence in each trial revealed that there were two homicides occurring separately and distinctly from one another. The convictions, therefore, were reversed upon the principle of criminal pleading that multiple felonies could not be charged in the same count of a single indictment. The Court held in each case that the State should have been required to elect to go to the jury on only one of the homicides. These cases do not, in any sense, stand for the proposition that only one homicide had occurred or that the accused could have been prosecuted for only one and not both.

In the *Smith* case, *supra*, the Court further relied upon *Fowler v. State*, 50 Tenn. (3 Heisk) 154 (1871), in which, in a single indictment, two persons were charged with committing an assault and battery upon three others. In that case the Court held that the indictment was not subject to being quashed or dismissed. Again, the *Fowler* case is not authority for the proposition that only a single offense had occurred when there were three separate victims.

Accordingly, we are of the opinion that *Smith v. State, supra*, was unsoundly based. It is overruled insofar as it purports to hold that there can be only one conviction when there are multiple victims of a vehicular accident involving criminal conduct.

The *Smith* case was cited and followed without analysis or discussion in *Huffman*

*v. State,* 200 Tenn. 487, 292 S.W.2d 738 (1956), in which the defendant deliberately rammed his automobile into the rear of another, injuring several occupants in the other vehicle. In that case apparently the State conceded, on the strength of *Smith v. State, supra,* that the accused "would be guilty of only one crime where he injures three or more persons as a result of one guilty stroke." 200 Tenn. at 492, 292 S.W.2d at 740.

Again, in that case, as in the present case, there were separate indictments, and none of the problems of pleading or practice which had been involved in the *Womack, Kannon* and *Fowler* cases, *supra,* was presented.

Not cited or discussed in *Huffman, supra,* was the case of *Broestler v. State,* 186 Tenn. 523, 212 S.W.2d 366 (1948), in which the accused was indicted, tried and convicted for assault and battery in two cases. The proof showed that he assaulted two different persons, one after the other, in an incident involving his admission to a theater. It was argued that only one punishment could be given because the second assault was merely an outgrowth of the first. Rejecting that contention, the Court said:

> "The facts here show two separate and distinct assaults on two different people. A conviction could be had in the one and not in the other or a conviction may be had in both. The reason is that each offense requires proof of facts additional to those involved in the other. It is true that the two assaults occurred very near together in point of time but they are separate and distinct." 186 Tenn. at 528–29, 212 S.W.2d at 368.

Seemingly, therefore, the earlier cases in this state sought to make a distinction between separate "acts" or separate "intents" where multiple victims were involved. This distinction was further elaborated in *Crocker v. State,* 204 Tenn. 615, 325 S.W.2d 234

(1959), where the accused was convicted of involuntary manslaughter growing out of an automobile accident in which two persons were killed. Again citing and relying upon *Smith v. State, supra,* this Court held that there could be only one conviction for the two homicides, stating:

> "In the present case the criminal intent present is an imputed disregard of the safety of all persons who might be in the way of the recklessly and unlawfully driven automobile, and no act or intent can be charged against the defendant as affecting either of the two injured individuals to the exclusion of the other. The defendant was guilty of a single unlawful act with a single criminal intent, and, therefore, can only be punished for a single offense or crime." 204 Tenn. at 619, 325 S.W.2d at 236.

■ We are of the opinion that the foregoing analysis improperly focuses upon the fictional "intent" of the accused rather than upon the elements of the criminal offense with which he is charged. In that case, as in this, the offense was homicide—the killing of another person.[1] In our opinion, when more than one person is killed, there is more than one homicide—regardless of any fictional "intent" or whether the deaths result from a single "act" or a series of acts. It seems illogical to us, as a general proposition, to hold that when two persons have been killed by an accused, he has committed only one homicide. Prior cases in this state so holding are overruled or modified to the extent that they conflict herewith.

This is not to suggest that there need be successive punishments in every case involving multiple victims. That is a matter to be addressed by the sentencing authority under all of the facts and circumstances. We simply are unwilling to approve a rationale, which has elsewhere been generally rejected, that an individual who kills several persons, whether with an automobile, a bomb or a shotgun, can only be convicted of a single homicide.

---

[1]. The unlawful killing of "any reasonable creature in being" with "malice aforethought" is murder. T.C.A. § 39 2401. Manslaughter is the "unlawful killing of another without malice." T.C.A. § 39 2409. As stated in *State v.* *Miranda,* 3 Ariz.App. 550, 416 P.2d 444, 452 (1966), it seems to us that "the legislature intended that the killing of each human being, under the circumstances described in the code, would constitute a separate offense."

As stated, this is the view held by most modern authorities on the subject.[2] The Supreme Court of Wisconsin recently reviewed the subject in the case of *State v. Rabe*, 291 N.W.2d 809 (Wis.1980). In the course of its opinion it discussed many leading cases on the point. In that case four deaths resulted from an automobile accident. Reversing a contrary decision in the trial court, the Wisconsin Court held that the prosecution was not limited to charging only one count of vehicular homicide.

In that case the defendant asserted that imposing responsibility on him for more than a single homicide would be based, not on his culpability, but on fortuitous circumstances beyond his control—that is, whether more than one person would be victimized by his drunken driving. Responding to that argument, the court said:

> "That statement is based on the supposed lack of foreseeability regarding the number of deaths which might arise from driving while intoxicated. We regard this argument as specious.

> "It is foreseeable that intoxicated use of a motor vehicle poses a substantial risk of causing multiple deaths. The fact situation in the present case serves as an excellent example. When one considers that the defendant had three passengers in his car, two of whom were killed in the accident, it is evident that, in deciding to drive while intoxicated, the defendant knew, or should have known, that he was putting at risk the lives of several persons." 291 N.W.2d at 822.

As pointed out by Justice Traynor in *Neal v. State* 55 Cal.2d 11, 9 Cal.Rptr. 607, 612, 357 P.2d 839, 844 (1960):

> "A defendant who commits an act of violence with intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person."

In *Vigil v. State*, 563 P.2d 1344, 1352 (Wyo.1977) it is stated:

> "As a general proposition, with few exceptions, in crimes against the person, when contrasted with crimes against property, there are as many offenses as individuals affected."[3]

We believe that the rule adopted today represents the better view and that it is consistent with the analysis contained in *State v. Black*, 524 S.W.2d 913 (Tenn.1975).

The judgments of the Court of Criminal Appeals and of the trial court are affirmed at the cost of petitioner.

---

2. There is some authority to the contrary, much of it limited to cases involving vehicles or to the interpretation of particular statutes. *E. g., Windham v. State*, 129 So.2d 338 (Ala.App. 1961) (two deaths in automobile collision held to constitute one offense); *but cf. Gandy v. State*, 159 So.2d 71 (Ala.App.1963) (multiple robberies at one time constituted multiple offenses); *Thessen v. State*, 508 P.2d 1192 (Alaska 1973) (arson causing multiple deaths in hotel fire held to constitute single offense); *but cf. Davenport v. State*, 543 P.2d 1204 (Alaska 1975) (two armed robberies occurring simultaneously held to constitute separate offenses); *State v. Wheelock*, 216 Iowa 1428, 250 N.W. 617 (1933) (killing of three persons in automobile accident held one offense); *but cf. State v. Melia*, 231 Iowa 332, 1 N.W.2d 230 (1941) (*Wheelock* case limited to its facts and rule not applied to multiple shootings); *State v. Penn. R. Co.*, 9 N.J. 194, 87 A.2d 709 (1952) (eighty-four deaths in railroad accident held one offense); *Myers v. Murensky*, 245 S.E.2d 920 (W.Va.1978) (construing specific statute on vehicular homicide).

3. For other cases and authorities permitting multiple convictions with respect to multiple victims of a criminal act, see *Holder v. Fraser*, 215 Ark. 67, 219 S.W.2d 625 (1949); *Murray v. United States*, 358 A.2d 314 (D.C.App.1976); *McHugh v. State*, 160 Fla. 823, 824, 36 So.2d 786, 787, cert. denied, 336 U.S. 918, 69 S.Ct. 640, 93 L.Ed. 1081 (1948); *People v. Allen*, 368 Ill. 368, 379, 14 N.E.2d 397, 405 (1937); *Fleming v. Commonwealth*, 284 Ky. 209, 144 S.W.2d 220 (1940); *State v. Fredlund*, 200 Minn. 44, 273 N.W. 353, 113 A.L.R. 215 (1937); *Burton v. State*, 226 Miss. 31, 79 So.2d 242 (1955); *State v. Whitley*, 382 S.W.2d 665 (Mo.1964); *Jeppesen v. State*, 154 Neb. 765, 49 N.W.2d 611 (1951); *State v. Martin*, 154 Ohio St. 539, 96 N.E.2d 776 (1951); *Fay v. State*, 62 Okl.Cr. 35, 71 P.2d 768 (1937); *Lawrence v. Commonwealth*, 181 Va. 582, 26 S.E.2d 54 (1943); *State v. Taylor*, 185 Wash. 198, 52 P.2d 1252 (1936); 7 Am.Jur.2d *Automobiles and Highway Traffic* § 344 (1963); 22 C.J.S. *Criminal Law* §§ 9(2), 298 (1961); Annot., 172 A.L.R. 1053, 1062 (1948); Annot. 113 A.L.R. 222 (1938).

BROCK, C. J., and FONES and COOPER, JJ., concur.

HENRY, J., participated in the consideration of this case but his death occurred before the release of this opinion.