# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 26, 2010

## STATE OF TENNESSEE v. CAULEY McCLITON CROSS

**Direct Appeal from the Circuit Court for Marshall County**
**No. 2008-CR-95     Robert Crigler, Judge**

---

**No. M2009-01179-CCA-R3-CD - Filed May 25, 2011**

---

The Defendant-Appellant, Cauley Cross, was convicted by a Marshall County jury of two counts of aggravated sexual battery, a Class B felony, and three counts of exhibition of obscene materials to a minor, a Class A misdemeanor. He was sentenced as a child predator to concurrent terms of ten years for both aggravated sexual battery convictions.[1] For the misdemeanor offenses, Cross was sentenced to eleven months and twenty-nine days in the county jail, to be served concurrently, for an effective sentence of ten years. On appeal, he claims: (1) his convictions were not supported by sufficient evidence; (2) his sentences for aggravated sexual battery were excessive; and (3) his convictions for aggravated sexual battery should be merged. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

Donna Orr Hargrove, District Public Defender; Michael J. Collins, Assistant Public Defender, Shelbyville, Tennessee, for the Defendant-Appellant, Cauley M. Cross.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Charles Frank Crawford, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

---

[1] We note that the judgment forms state that one of the aggravated sexual battery convictions merged into the other conviction. This designation contradicts the trial court's findings at the sentencing hearing. The trial court found that the two convictions did not merge, and it ordered the sentences to run concurrently. In reconciling this contradiction, the trial court's findings at the sentencing hearing are controlling. See State v. Jeffrey Dana York, No. M2001-02956-CCA-R3-CD, 2002 WL 31694467, at *4 (Tenn. Crim. App., at Nashville, Dec. 3, 2002) ("Where there is a conflict between a judgment form and the transcript of the proceedings, the transcript controls.") (citing State v. Moore, 814 S.W.2d 381, 383 (Tenn. Crim. App. 1991); State v. Davis, 706 S.W.2d 96, 97 (Tenn. Crim. App. 1985)).

**Facts**.  R.W.[2] , Cross's next-door neighbor, testified that she was twelve years old when these offenses occurred.  Cross lived with his wife, Joan, and her two sons, N.S. and B.S.  Cross was the stepfather of N.S. and B.S.  R.W. frequently went to Cross's home to play with his stepsons.  She stated that N.S. was nine and B.S. was twelve at the time of the offenses.

R.W. testified that she went to Cross's home on the afternoon of March 29, 2008, to celebrate N.S.'s birthday.  She played with N.S. outside before watching a movie in the living room with Cross and his wife.  After the movie ended, Joan took the children to a store to purchase soda and candy.  When they returned, R.W. played video games with N.S. and B.S.  R.W. said they played until dinner at 8:00 or 9:00 p.m.  Cross cooked ribs and beans.  R.W. testified that Joan did not eat dinner with them because she had already gone to bed.  R.W. ate dinner with N.S. and B.S. in a storage room.  The storage room had a small television, and they watched a movie.  R.W. said she went to the kitchen to get a drink.  She walked through the living room and saw Cross watching a "nasty movie."  The movie showed a woman's breasts.  R.W. returned to the storage room and told N.S. and B.S. about the nasty movie.  She was told that Cross "does that all of the time."  While in the storage room, R.W. received a call on her cellular telephone from her mother.  Her mother wanted to know when she was coming home.  R.W. responded that she would be home soon.  She did not tell her mother about the nasty movie.  R.W. walked to the kitchen and put her cellular telephone on a charger.  She said Cross was watching a "regular movie" when she passed through the living room and returned to the storage room.

R.W. testified that Cross came into the storage room and asked the children if they wanted to watch a movie with him.  They went to the living room and sat on the couch with Cross.  A movie called "Zandalee" was already playing.  R.W. said the movie was near the beginning.  The lead actor was Nicholas Cage.  R.W. testified that the movie had two or three sex scenes.  She recalled a specific scene where a man and a woman had sex near a gate.  She said the actors were naked and she could see a woman's breasts.  She did not see below the woman's panty line.

R.W. testified that while watching the movie, she was sitting next to N.S.  She stated, "I was cuddled up with [N.S.] because it was gross.  I kept burying my head in his chest and stuff like that."  R.W. said she felt N.S.'s hand on her left breast.  She moved his hand away several times but "it just kept coming back."  R.W. stated, "I knew it wasn't [N.S.] because he was asleep.  One time when I moved it away, I saw [Cross's] hand pushing [N.S.'s] elbow to make it go up on my breast."  N.S.'s hand stayed on the outside of her clothing.  She said the movement of N.S.'s hand onto her breast was not accidental.  R.W. testified that N.S.'s hand moved onto her breast about five times.  She eventually got up from the couch and went to the restroom.  When she returned to the couch, Cross "didn't do it anymore."  The movie

---

[2]It is the policy of this court that the full names of minor victims are omitted.

ended and Cross went to the kitchen. Her cellular telephone began to ring and Cross answered it. R.W. stated, "He takes the phone with him, I think to his bedroom, and he talks to my mom. And when he comes back out, he told me that my mom said I could spend the night." R.W. said her mother called her later that evening. R.W. was afraid of going outside in the dark, so she told her mother that she would stay the night. She did not tell her mother about the incident on the couch. R.W. claimed she was unable to fall asleep until the next morning when Cross left the house.

The next morning, R.W. talked with N.S. and B.S. about what Cross did on the couch. They went to R.W.'s house and told her mother about the incident. When they finished explaining what transpired, Cross burst into the room. R.W. said Cross had never entered her house without first knocking on the door. Cross told R.W.'s mother that "it was just all a joke." He did not explain what the joke was. R.W.'s mother then told the children to go outside. R.W. testified about her position on the couch when she watched "Zandalee." She initially claimed she sat between Cross and N.S. R.W. later testified that N.S. sat between her and Cross.

N.S. testified that he was nine years old at the time of the offenses. On the night of March 29, he was with R.W., B.S., and Cross. They sat on the couch and watched a movie. N.S. testified that he sat between Cross and R.W. N.S. said the actors were naked and were doing "nasty stuff." He recalled the actors being naked in only one scene of the movie. N.S. hid his face when the actors took their clothes off. He recalled watching only part of the movie. N.S. testified that during the movie, Cross put N.S.'s hand on R.W.'s breast. He was questioned further about the incident, but he provided no audible responses. On cross-examination, N.S. acknowledged that Cross and his wife were having marital problems.

B.S. testified that he was twelve years old at the time of the offenses. He recalled watching a movie on the couch with Cross, R.W., and N.S. He said the movie was called "Swindle," and it had a "[b]unch of dirty scenes." B.S. testified that R.W. sat between Cross and N.S. on the couch.. In the movie, he saw a man and a woman naked. The movie showed the man's butt. It also showed the woman's butt, breasts, and "private" area. B.S. said the man and the woman were having sex . While the movie was playing, B.S. saw Cross place N.S.'s hand on R.W.'s breast. B.S. corroborated R.W.'s testimony about speaking with R.W.'s mother the next morning. He said Cross tried to come through the door of R.W.'s home. Cross was cursing and saying, "Let me get my boys."

On cross-examination, B.S. again stated that he saw a woman's "lower privates" in the movie. He described the movie as "kind of like a bunch of nasty scenes." B.S. claimed he told his mother about the touching incident before he spoke to R.W.'s mother. B.S. was again questioned about the seating arrangement on the couch during the movie. He said he "got mixed up" when he first testified that R.W. sat between N.S. and Cross. B.S. stated that N.S. sat between Cross and R.W.

Donna W. testified that she was the mother of R.W. She stated that R.W. frequently played at Cross's house; however, prior to March 29, R.W. had never spent the night. Donna W. was expecting R.W. to come home after dinner. She called R.W.'s cellular telephone at around 8:00 p.m. Donna W. was "freaked out" when Cross answered the phone. Cross said he and the children were about to eat dinner. Donna W. called R.W.'s phone an hour later and Cross answered. He said they still had not eaten dinner. Donna W. called forty-five minutes later and R.W. answered her phone. R.W. wanted to spend the night at Cross's home because "she was scared of the dark, and everybody was supposedly asleep."

Donna W. testified that, the next morning, R.W., N.S., and B.S. came running into her bedroom. Donna W. stated, "They all three come running in my bedroom, and they all three told me what [Cross] did." R.W. explained that Cross had placed N.S.'s hand on her breast "and was rubbing on it." Donna W. said N.S. and B.S. corroborated what R.W. said transpired. Donna W. testified that Cross "came flying in the house" less than two minutes later. She said it was unusual for him to enter her home without knocking. According to Donna W., Cross stated, "It's all just a big joke. It was just kidding. We were just doing it in a playful manner, meaning nothing." Donna W. said Cross claimed "it was just a big misunderstanding." Donna W. said she had known Cross's wife for about a year. She stated that Cross did not have a good marriage and that his wife was scared of Cross.

Cross's wife testified and stated that both of her sons were under the age of thirteen on March 29, 2008. On that night, she went to bed between 8:30 and 9:00 p.m. She recalled eating dinner with Cross, R.W., and her two sons. After dinner, Cross and the children went to the living room and watched a kids movie.

Cross's wife further testified that she saw part of the sexually-explicit movie on another occasion. She was responsible for turning the movie over to the police. She said the movie had sex scenes with graphic nudity. She believed the movie was not appropriate for children. She said B.S. came to speak with her after Cross left the house the next morning. B.S. told her about the incident on the couch.

Cross's wife also testified that her sons were at R.W.'s house when Cross came home. She confronted Cross about the allegations. He made a general denial and claimed the children were "crazy." Cross told her that he would go next door and straighten things out. When Cross returned, he claimed "he had gotten it straightened out" and "it was all just a big misunderstanding." At trial, Cross's wife was shown a prior statement that she had given. She then stated that Cross claimed N.S. "was messing around, and he took his hand, was rubbing it on [R.W.'s] breast" in response to the allegations.

On cross-examination, Cross's wife testified that she cooked dinner for everyone on March 29. She said everyone, including Cross, ate together in the living room. They ate at about 6:00 p.m.

Captain Norman Dalton of the Marshall County Sheriff's Office testified that he assisted with the investigation of this case. He reviewed the sexually-explicit movie viewed by the children on the night of the offense. Captain Dalton said the movie contained five or six sexual scenes. The movie showed the buttocks of a man. It also showed the butt, breasts, and genital area of a woman. The movie depicted vaginal and anal intercourse. A portion of the movie was shown to the jury. Captain Dalton testified that the movie was not pornographic, and it might have been released in theaters. He said the movie in the Cross's home was the "uncut rated version." Captain Dalton did not believe that the movie had any value for someone under the age of thirteen. He said he would not take someone under the age of thirteen to see the movie.

Cross testified that he went to an agricultural center on the date the offenses occurred. He returned to his home at around 8:30 p.m. and began to prepare dinner. He cooked barbeque chicken with beans. Cross said he ate dinner with the children at roughly 10:00 p.m. They sat on the couch in the living room and watched a kids movie. His wife had already gone to bed. When the movie ended, Cross said the children went to the storage room and played together for about an hour. Cross then began to watch a movie that he had never seen before. The children came into the living room during the first part of that movie. This part showed a woman's breasts. Cross testified that he immediately fast-forwarded the movie. Soon thereafter, he turned the movie off because it contained "a bunch of cussing and stuff." Cross denied that he manipulated N.S.'s hand so that it would touch R.W.'s breasts.

Cross testified that his marriage was not on good terms. He discovered that his wife committed adultery prior to the date of the offenses. Cross said his wife also "started drinking again." He believed his wife had bad feelings toward him. Cross said he "planned to take the boys" because his wife was unfit to be their mother. He testified that his wife had children from a previous marriage that were taken away.

On cross-examination, Cross again claimed he turned the movie off after its first sex scene. He said the first scene took place near a gate. However, the prosecutor told Cross that the scene at the gate was not the first sex scene in the movie. Cross acknowledged that he saw an earlier scene with a dancing girl. Cross claimed R.W. lied during her testimony. He also believed that his stepsons' testimony was manipulated by his wife, Donna W., and R.W. Cross acknowledged that he went to Donna W.'s home the morning after the incident occurred. He stated that "the boys were not allowed to go to [R.W.'s] house . . . because [R.W.] and [B.S.] were caught fooling around together." Cross said he entered the home without knocking. He denied telling Donna W. that he was just playing around with the children.

The jury convicted Cross as charged.

**Sentencing Hearing**. At the start of the sentencing hearing, a pre-sentence report and a psychosexual report were entered as exhibits. Officer Jim Grimes of the Tennessee Probation and Parole Department testified that he prepared the pre-sentence report. He interviewed Cross after the jury trial. Officer Grimes said Cross denied committing the offenses. He also claimed that his wife lied on the stand. Officer Grimes said Cross admitted that the inappropriate movie was playing in the living room. Officer Grimes also interviewed Cross's wife. She provided a victim-impact statement on behalf of N.S. and B.S. She chose not to respond to the question of whether Cross should be in jail. Officer Grimes believed this to be "sort of a self-preservation answer." Officer Grimes spoke to R.W.'s father, David W. He believed that Cross should be in jail. David W. reported that Cross "left threatening messages on the phone, that he would kill us and burn the house down if Donna [W.] testified."

Officer Grimes testified that Cross was on probation when he committed these offenses. On March 12, 2008, he was convicted of driving under the influence in Maury County, Tennessee. This probationary sentence was pending revocation. Officer Grimes said Cross was also on probation in Marshall County, Tennessee for failure to appear. He was convicted of this offense on February 5, 2008. Officer Grimes testified that Cross was also convicted of domestic assault; however, this conviction was retired after six months. Cross had other past convictions for contempt, speeding, and unauthorized use of an automobile.

Officer Grimes testified that Cross failed to comply with the conditions of his release into the community. He had two outstanding indictments based on failure to appear. Only one of these charges was related to the offenses in this proceeding. Officer Grimes said Cross was employed in the construction business from 1998 through 2006. He also earned prize money as a bull rider. Captain Dalton corroborated Officer Grimes's testimony that Cross had two pending charges for failure to appear. One of these charges related to a domestic matter in general sessions court. The other charge concerned a domestic matter and exhibition of pornographic materials to a minor. Captain Dalton stated Cross was arrested for driving under the influence while on bond.

Patricia Parker and Roy Fann, Cross's cousins, testified that Cross was a hard worker and a good person. Cross had a close relationship with and cared for his grandmother. They asked the court for leniency in sentencing Cross.

At sentencing, Cross maintained that he was innocent of the convicted offenses. He had considerable experience working in construction. He acknowledged that he was charged with operating a motor vehicle without a license in Missouri. Defense counsel stated that Cross failed to pay that ticket and that an arrest warrant had been issued. Cross said he had "taken care of that." Cross commented on a statement in the presentence report that Joan had

found inappropriate movies in their house. He said Joan was responsible for the presence of a particular video.

Cross testified that the offenses occurred on March 15, and not March 29. He claimed he took the children to a skating rink on March 29. Cross said several witnesses could have testified about his whereabouts on the date the offenses occurred. These witnesses would have testified that he was roping during the daytime. Cross said this alleged testimony would have contradicted the testimony that he was at home throughout the day. Cross testified that Donna W. allowed R.W. to play at his house several weeks after the offenses occurred. He asked for leniency in sentencing because his grandmother was in poor health and he needed to take care of her.

On cross-examination, Cross acknowledged that he was arrested for driving under the influence in Georgia. He committed this offense while on bond. Cross was ordered to pay fines for driving under the influence. He did not pay these fines because he was extradited back to Tennessee. Cross said he missed his court date in Tennessee because he was incarcerated in Georgia. He claimed he was not allowed to use the phone in Georgia; therefore, he could not inform the court in Tennessee that he would miss the court date.

The presentence report includes Cross's criminal history. He was convicted of two counts of domestic assault, failure to appear, possession of unlawful drug paraphernalia, and driving under the influence. He had two pending charges for failure to appear in Marshall County. Cross reported that he also had convictions for driving under the influence in Georgia and Missouri.

At the conclusion of the sentencing hearing, the trial court made its sentencing determinations. It concluded that several enhancement factors were applicable under Tennessee Code Annotated section 40-35-114. First, it found that enhancement factor (1) was met based on Cross's numerous prior convictions. The trial court determined that factor (8) applied because before trial, Cross failed to comply with the conditions of his release into the community. The trial court found that factor (13) also applied because Cross was on probation when he committed the offenses. The trial court did not address whether any mitigating factors were present.

After the sentencing hearing, Cross filed a motion for new trial. This motion was denied by the trial court. Cross filed a timely notice of appeal.

**ANALYSIS**

**I. Sufficiency of the Evidence**. Cross challenges the sufficiency of the evidence for his convictions for aggravated sexual battery and exhibiting obscene materials to a minor. In support of his arguments, he relies exclusively on his own testimony at trial. He refers to

his denial of using N.S.'s hand to touch R.W.'s breast. Cross also refers to his testimony that he did not knowingly show indecent movie scenes to the children. In response, the State argues that Cross's convictions were supported by sufficient evidence. We agree with the State.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, this court must consider "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." The requirement that guilt be found beyond a reasonable doubt is applicable in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977) and Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as the triers of fact. State v. Cribbs, 967 S.W.2d 773, 793 (Tenn.1998).

When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." State v. Philpott, 882 S.W.2d 394, 398 (Tenn. Crim. App. 1994) (citing State v. Cabbage, 571 S.W.2d 832, 836 (Tenn. 1978), superseded by statute on other grounds as stated in State v. Barone, 852 S.W.2d 216, 218 (Tenn. 1993)). This court has often stated that "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." Bland, 958 S.W.2d at 659 (citation omitted). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citation omitted).

Cross was convicted of two counts of aggravated sexual battery, which is defined under Tennessee Code Annotated section 39-13-504. This section states in relevant part:

(a) Aggravated sexual battery is unlawful sexual contact with a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances:

(4) The victim is less than thirteen (13) years of age.

T.C.A. § 39-13-504(a)(4) (2008). Section 39-13-501(6) defines sexual contact as follows:

"Sexual contact" includes the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification[.]

T.C.A. § 39-13-501(6) (2008).

In this case, the evidence supported the two convictions for aggravated sexual battery. R.W. testified that she was playing with N.S. and B.S. in the storage room when Cross entered the room and asked the children if they wanted to watch a movie. R.W. said everyone sat on a couch in the living room and watched a movie that had multiple sex scenes. She testified that during the movie, she could feel N.S.'s hand on the clothes covering her breast. She said N.S. was asleep at the time; however, she could see Cross moving N.S.'s elbow so that his hand touched her breast. R.W. said she pushed N.S.'s hand away several times, but "it just kept coming back." She testified that the movement of N.S.'s hand onto her breast was not accidental. N.S. and B.S. corroborated R.W.'s testimony that Cross placed N.S.'s hand on R.W.'s breast. During the viewing of an explicitly sexual movie, Cross controlled N.S.'s hand and repeatedly directed it to touch the clothes covering R.W.'s breast. Under these circumstances, there was sufficient evidence to show the touching was for the purpose of sexual arousal or gratification. Both R.W. and N.S. are considered victims under sections 39-13-504(a) and 39-13-501(6). In apparently a matter of first impression we hold that N.S. was a victim because we interpret the definition of sexual contact to include touching the intimate parts of a third party by or through another victim. See T.C.A. § 39-13-501(6) (2008). We recognize that Cross denied committing these offenses; however, the jury rejected his version of events. The jury is responsible for evaluating the credibility of witnesses, and thus we will not override its determination. The evidence supported the convictions for aggravated sexual battery.

Cross was also convicted of three counts of exhibition of obscene materials to minors. This offense is codified under Tennessee Code Annotated section 39-17-911. This section states in pertinent part:

(a) It is unlawful for any person to knowingly sell or loan for monetary consideration or otherwise exhibit or make available to a minor:

(1) Any picture, photograph, drawing, sculpture, motion picture film, video game, computer software game, or similar visual representation or image of a person or portion of the human body, that depicts nudity, sexual conduct, excess violence, or sado-masochistic abuse, and that is harmful to minors[.]

T.C.A. § 39-17-911(a)(1) (2008).  Section 39-17-901(6) sets forth the requirements for whether something is harmful to minors.  It states:

> (6) "Harmful to minors" means that quality of any description or representation, in whatever form, of nudity, sexual excitement, sexual conduct, excess violence or sadomasochistic abuse when the matter or performance:
>
> (A) Would be found by the average person applying contemporary community standards to appeal predominantly to the prurient, shameful or morbid interests of minors;
>
> (B) Is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable for minors; and
>
> (C) Taken as whole lacks serious literary, artistic, political or scientific values for minors[.]

T.C.A. § 39-17-901(6) (2008).

It is clear from the record that the content of the movie was testified to by several witnesses, viewed in its entirety by the jury, and entered as an exhibit in this case.  However, the movie has not been viewed by this court for adjudication of this issue because it is not in the appellate record.  It should be noted at the outset that the appellate court clerk acknowledged that "the exhibits were received in this office but have not been found."  After exercising due diligence in locating the exhibit, it was determined that it could not be located.  The trial court clerk and the parties were made aware of the lack of the exhibit by an order filed by this court which provided them an opportunity to supplement the record with a copy of the exhibit.  We did not receive a response from the parties regarding this issue.  Thus, we are compelled to presume that there was sufficient evidence presented to the jury regarding the convictions for exhibiting obscene material to minors.  See State v. Oody, 823 S.W.2d 554, 559 (Tenn. 1991); State v. Alton Darnell Young, No. M1999-01166-CCA-R3-CD, slip op. at 3 (Tenn. Crim. App., Nashville, Apr. 14, 2000); State v. Ross Junior Graham, No. 01C01-9110-CC-00316, concurring slip op. at 3 (Tenn. Crim. App., Nashville, Oct. 22, 1992) (Tipton, J., concurring).

Based on the testimony at trial, the convictions for aggravated sexual battery and exhibiting obscene materials to a minor were supported by sufficient evidence.  Cross is not entitled to relief on these issues.

**II. Sentencing**.  Cross claims his ten-year sentences for aggravated sexual battery were excessive.  He does not argue that the trial court erred in finding that several

enhancement factors were applicable. He also does not allege that the trial court overlooked any mitigating factors. Cross's brief contains the following argument:

> A sentence of eight years would have been a more appropriate sentence. This sentence would still achieve the purposes of the Sentencing Reform Act while at the same time conserving Department of Corrections [sic] resources. In a time of severe budget problems, the Trial Court should have sentenced Cross to a lesser sentence.

The State contends the trial court acted within its discretion in sentencing Cross. It claims the sentences were proper because several enhancement factors were applicable. Upon review, we agree with the State.

On appeal, we must review issues regarding the length and manner of service of a sentence de novo with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2008). Nevertheless, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Our review is de novo, without a presumption of correctness, if the trial court applied inappropriate mitigating or enhancement factors or otherwise failed to follow the principles of the Sentencing Act. State v. Carter, 254 S.W.3d 335, 345 (Tenn. 2008). Here, the trial court did not consider an enhancement factor and a mitigating factor that were applicable; therefore, our review is de novo without a presumption of correctness.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (1) the evidence adduced at the trial and the sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (6) any statistical information provided by the administrative office of the courts as to Tennessee sentencing practices for similar offenses; and (7) any statement the defendant wishes to make in the defendant's own behalf about sentencing. See T.C.A. § 40-35-210(b); see also State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002); State v. Osborne, 251 S.W.3d 1, 24 (Tenn. Crim. App. 2007).

The Tennessee Supreme Court has stated that the 2005 Amendments to the Sentencing Act "deleted as grounds for appeal a claim that the trial court did not weigh properly the enhancement and mitigating factors." Carter, 254 S.W.3d at 344. In sentencing a defendant, the trial court must consider the sentencing guideline that suggests an adjustment to the defendant's sentence when enhancement or mitigating factors are present; however, these factors under the guideline are merely advisory rather than binding upon a trial court's sentencing decision. Id.; see also T.C.A. § 40-35-210 (2008). The weight given to each

enhancement or mitigating factor is left to the sound discretion of the trial court. Id. Thus, this court is "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 346. The defendant, not the State, has the burden of showing the impropriety of the sentence. T.C.A. § 40-35-401(d) (2008), Sentencing Commission Comments.

Cross was sentenced as a child predator to ten years for the aggravated sexual battery convictions. The sentencing range for aggravated sexual battery, which is a Class B felony, is between eight and twelve years. T.C.A. § 39-13-504 (2008); T.C.A. § 40-35-112(a)(2) (2008). A conviction for aggravated sexual battery requires serving one hundred percent of the sentence. T.C.A. § 40-35-501(I) (2008). Additionally, under Tennessee Code Annotated section 40-35-303(a), Cross was not eligible for probation. T.C.A. § 40-35-303(a) (2008).

The trial court did not state whether any mitigating factors were applicable under section 40-35-113. It found that several enhancement factors were met under section 40-35-114:

(1) The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range;

(8) The defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community;

(13) At the time the felony was committed, one (1) of the following classifications was applicable to the defendant:

(C) Released on probation[.]

In viewing the record, the trial court correctly found that these enhancement factors were applicable. Factor (1) was met based on the presentence report and the testimony at the sentencing hearing. The presentence report lists Cross's criminal history, which includes convictions for domestic assault, failure to appear, driving under the influence, and unlawful drug paraphernalia. Captain Dalton and Cross also provided testimony about the prior convictions. Factor (8) applies because, prior to trial, Cross failed to comply with the conditions of his release into the community. He was arrested for driving under the influence while on bond. Cross acknowledged that he was convicted of this offense. He also admitted that he missed a court date, which led to a charge for failure to appear. Factor (13)(C) was satisfied because Cross committed the offenses while on probation. Captain Dalton testified that Cross was on probation for two separate offenses.

The trial court should have also considered enhancement factor (14) because Cross abused a position of private trust. In defining a position of trust, the Tennessee Supreme Court has stated:

> The determination of the existence of a position of trust does not depend on the length or formality of the relationship, but upon the nature of the relationship. Thus, the court should look to see whether the offender formally or informally stood in a relationship to the victim that promoted confidence, reliability, or faith.

State v. Kissinger, 922 S.W.2d 482, 488 (Tenn. 1996). The court added, "The position of parent, step-parent, babysitter, teacher, coach are but a few obvious examples." Here, Cross was N.S.'s stepfather, and he claimed to have taken care of N.S. since he was an infant. Cross also abused a position of private trust with R.W. Cross was responsible for watching R.W. when the offenses occurred. R.W. was Cross's next-door neighbor, and she frequently went to his home to play with N.S. and B.S. At the very least, Cross acted as a babysitter in supervising R.W. on the day of the offenses. Cross abused a position of private trust with both victims. Therefore, this enhancement factor was applicable.

The trial court failed to consider one mitigating factor under section 40-35-113. Factor (1) looks to whether the defendant's actions "caused nor threatened serious bodily injury." T.C.A. § 40-35-113 (2008). Here, there was no evidence that Cross's actions caused or threatened serious bodily injury. Therefore, this mitigating factor was present. No other mitigating factors were met under section 40-35-113.

We hold that the trial court did not err in sentencing Cross to ten years for both aggravated sexual battery convictions. The trial court correctly found that three enhancement factors were applicable. The record also shows that another enhancement factor was satisfied, as Cross abused a position of private trust with both victims. We recognize that the trial court failed to consider a mitigating factor. Nonetheless, we believe Cross's sentence is consistent with the principles of the Sentencing Act. The trial court acted within its discretion in sentencing Cross two years above the statutory minimum for both convictions. Accordingly, Cross is not entitled to relief on this issue.

**III. Merger**. Cross claims the trial court should have merged the aggravated sexual battery convictions. He contends the separate convictions violated principles of double jeopardy because they were based on a single criminal act. Cross also asserts that N.S. was not a victim, but rather an "innocent agent." The State argues that the double jeopardy clause does not require merging the offenses. It also claims N.S. was a victim.

As a preliminary matter, we note that Cross offers no legal argument in support of his double jeopardy claim. He fails to provide any legal analysis as to why N.S. would not be considered a victim under sections 39-13-504(a) and 39-13-501(6). He merely contends that

N.S. was an "innocent agent" because Cross placed N.S.'s hand on R.W.'s breast. Cross's failure to support his claim by a legal argument would ordinarily constitute a waiver of the issue. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."); State v. Thompson, 36 S.W.3d 102, 108 (Tenn. Crim. App. 2000). However, we have reviewed the record and will address the merits of the claim. As previously discussed while reviewing the sufficiency of the evidence, R.W. and N.S. qualify as victims under sections 39-13-504(a) and 39-13-501(6). The fact that both victims were harmed by a single criminal act does not bar multiple convictions. See State v. Irvin, 603 S.W.2d 121, 124 (Tenn. 1980); State v. Antray Terrill Morrow, No. W2002-02065-CCA-R3-CD, 2003 WL 22848974, at *2 (Tenn. Crim. App., at Jackson, Nov. 25, 2003) ("Generally, more than one conviction for a single criminal act may stand where there are multiple victims."); State v. J. L. Bunn, No. 01C01-9311-CC-00401, 1994 WL 658551, at *2 (Tenn. Crim. App., at Nashville, Nov. 22, 1994); State v. Goins, 705 S.W.2d 648, 651 (Tenn. 1986) (citations omitted). We find no support for Cross's claim that principles of double jeopardy require merging the two convictions for aggravated sexual battery. Therefore, Cross is not entitled to relief on this issue.

## CONCLUSION

Based on the foregoing, the judgments of the trial court are affirmed.

_____
CAMILLE R. McMULLEN, JUDGE