FILED
12/30/2025
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 16, 2025 Session

**STATE OF TENNESSEE v. JEREMY MICHAEL FOWLER**

**Appeal from the Circuit Court for Williamson County**
**Nos. W-CR230286, W-CR22-213-A      Joseph A. Woodruff, Judge**

_____

**No. M2024-01366-CCA-R3-CD**

_____

A Williamson County jury convicted Jeremy Michael Fowler ("Defendant") in Case No. W-CR22-213-A ("the Waffle House Case") of seven counts of Class A misdemeanor reckless endangerment (Counts 1-7), two counts Class C felony aggravated assault (Counts 8 and 9), and one count of Class A misdemeanor unlawful possession of a weapon after having been convicted of a misdemeanor crime of domestic violence (Count 11).  At the outset of the sentencing hearing in the Waffle House Case, Defendant entered guilty pleas in Case No. W-CR230286 ("the Jail Case") to two counts of Class A misdemeanor assault, which stemmed from incidents that occurred while Defendant was incarcerated awaiting trial in the Waffle House Case.  Following a sentencing hearing, the trial court sentenced Defendant in the Waffle House Case to two consecutive terms of six years on the aggravated assault convictions, six consecutive terms of eleven months and twenty-nine days on the reckless endangerment convictions, and a consecutive term of eleven months and twenty-nine days on the weapons charge.  The court merged the reckless endangerment conviction in Count 7 with Count 6.  Additionally, pursuant to his plea agreement in the Jail Case, the trial court sentenced Defendant to concurrent terms of eleven months and twenty-nine days on the assault convictions and ordered the sentence to run consecutively to the sentence in the Waffle House Case.  On appeal, Defendant claims the court erred by (1) failing to merge all the reckless endangerment convictions in the Waffle House Case, (2) misapplying enhancement and mitigating factors resulting in an excessive sentence, and (3) imposing consecutive sentences.  Based upon the proof presented at trial, the indictment, and the jury verdicts in the reckless endangerment offenses, we reverse the court's merger of Count 7 into Count 6 and remand for the trial court to enter an amended judgment omitting the merger language in Count 7 and aligning the sentence in Count 7 concurrently with Count 6.  In all other regards, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part, Reversed in Part, and Remanded**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and KYLE A. HIXSON, JJ., joined.

Sean R. Aiello, (on appeal) Franklin, Tennessee, and Marci M. Curry and Theresa Smith (at trial) for the appellant, Jeremy Michael Fowler.

Jonathan Skrmetti, Attorney General and Reporter; William C. Lundy, Assistant Attorney General; Stacey B. Edmonson, District Attorney General; and Jay Fahey and Jennifer K. Dungan, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### Procedural Background

The Williamson County Grand Jury indicted Defendant in the Waffle House Case on seven counts of Class B felony attempted second degree murder (Counts 1-7), two counts of aggravated assault (Counts 8 and 9), one count of possession of a firearm during the commission of a dangerous felony, to wit: attempted criminal homicide (Count 10), and one count of unlawful possession of a weapon following a conviction for a misdemeanor crime of domestic violence (Count 11).[1]

The charges in the Waffle House Case stemmed from an altercation that began when Defendant became involved in an argument with Brandon Bruce, who was standing in line with his girlfriend, Victoria O'Connor, inside a Williamson County Waffle House. After Mr. Bruce and Ms. O'Connor exited the restaurant, Defendant followed them outside, and Defendant confronted Mr. Bruce, who was standing by his vehicle in the parking lot. As Defendant was arguing with Mr. Bruce, a black SUV pulled up and stopped near Defendant. One of the passengers in the SUV shouted obscenities from the rear window. In response, Defendant drew a handgun and fired six shots toward the SUV, which was occupied by three adults and four juveniles. Two rounds struck the SUV, and one of the juveniles sustained a minor grazing injury to his arm. As the SUV sped away, Defendant returned to Mr. Bruce's vehicle and inserted his pistol through the passenger side window and threatened Mr. Bruce and Ms. O'Connor, both of whom were seated inside the vehicle.

The assault charges in the Jail Case stemmed from incidents that occurred while Defendant was incarcerated in the Williamson County Jail awaiting trial on the charges in the Waffle House Case.

---

[1] The indictment contained two additional counts. In Count 12, co-defendant Pasha Surbaugh was charged with "accessory after the fact – aid," and in Count 13, co-defendant Denzel Ware was charged with "accessory after the fact – harboring." These counts were severed from Defendant's case.

**Jury Trial in the Waffle House Case**

Seventeen witnesses testified during the four-day jury trial in the Waffle House Case. Because Defendant does not contest the sufficiency of the evidence, we will only briefly summarize the testimony.

Around 3:00 a.m. on February 13, 2022, Defendant and two friends, Pasha Surbaugh and Denzel Ware, arrived at the Waffle House located near the intersection of Highway 96 and Interstate 65 in Franklin after spending approximately five hours at a strip club in Nashville. According to Mr. Surbaugh, Defendant was intoxicated, and when the men entered the Waffle House, Defendant "started yelling some nonsense" about paying for everybody's food.

The Waffle House was crowded with customers, including Rebekah Sullivan, Isaac May, Isaac Arango, and four juvenile friends. Most of Ms. Sullivan's group had finished eating, paid their bill, and returned to Ms. Sullivan's SUV before Defendant began to argue with another customer. However, Mr. May had remained inside to go to the restroom, and a juvenile, H.S., had remained inside to give Mr. May his bill.[2]

Brandon Bruce and his girlfriend, Victoria O'Connor, were standing in line ordering their food to go. Defendant and Mr. Bruce began to argue. After witnessing the argument, H.S. decided to leave and went outside to the SUV. Ms. Sullivan and Mr. Arango reentered the Waffle House, gave Mr. May his bill, and then went back to their vehicle.

As Defendant and Mr. Bruce continued to argue, Mr. Ware and Ms. O'Connor attempted to defuse the situation. After Mr. Bruce and Ms. O'Connor exited the restaurant, Defendant followed and continued to argue with Mr. Bruce who was standing in the parking lot near his vehicle.

Ms. Sullivan pulled her SUV beside where the two men were arguing and stopped. Mr. May lowered the driver's side rear window and shouted "[b]oth y'all quit acting like p*****s and go about your night." Defendant immediately pulled a black handgun out of his waistband and fired six times, hitting the SUV twice. One round "grazed" the arm of one of the juvenile occupants. Ms. Sullivan then sped away. The incident was recorded on a cell phone from inside the Waffle House and by one of the occupants of the SUV. Both videos with audio were played for the jury.

Defendant then returned to where Mr. Bruce was now seated in the passenger seat of his vehicle, inserted the pistol through the passenger window, and threatened Mr. Bruce and Ms. O'Connor. Defendant and Mr. Ware then got into Mr. Surbaugh's vehicle and left

---

[2] Consistent with the policy of this court, we will refer to the minor victims by their initials only.

the scene. Mr. Surbaugh stayed that night at Mr. Ware's house, and the two men were arrested by Franklin Police Department (FPD) officers the next morning. Defendant was apprehended later that morning by FPD Officer Adam Wade.

The video recorded by Andrew Holm from inside the Waffle House clearly shows Defendant's approaching Mr. Bruce, Ms. Sullivan's SUV pulling close to Defendant, Defendant's drawing his pistol and firing six shots toward the SUV, and Defendant's returning to Mr. Bruce's vehicle and inserting the pistol into the front passenger window.

Whitney De La Cruz, a customer at the restaurant, testified that she witnessed the arguments both inside and outside the Waffle House. She said she saw Defendant fire a weapon multiple times toward the SUV. She identified Defendant as wearing a camouflage hoodie in the video recorded by Mr. Holm.

Defendant presented no witnesses, and following deliberation, the jury found Defendant guilty of seven counts of Class A misdemeanor reckless endangerment (Counts 1-7), as a lesser-included offense of attempted second degree murder; two counts of Class C felony aggravated assault (Counts 8-9); and one count of Class A misdemeanor unlawful possession of a weapon after having been convicted of a misdemeanor crime of domestic violence (Count 11). The jury found Defendant not guilty of possession of a firearm during the commission of a dangerous felony, to wit: attempted criminal homicide (Count 10).

**Sentencing Hearing**

At the outset of the June 30, 2023 sentencing hearing in the Waffle House Case, Defendant pleaded guilty to both counts of assault in the Jail Case. Pursuant to a plea agreement, the sentences would be aligned concurrently with each other but consecutively to the sentence in the Waffle House Case, and the length, percentage of service, and manner of service of the Jail Case sentence was to be determined by the trial court.

The State then introduced without objection a letter from Hope Center Ministries, an "amended and restated" Pre-sentence Investigation Report, certified copies of Defendant's prior convictions, disciplinary records from the Williamson County Jail, and a Maury County bond order. The State called Katie Howell, a probation and parole officer with Tennessee Department of Correction, who completed the Strong-R interview of Defendant and prepared the Pre-Sentence Investigation Reports. Officer Howell testified that Defendant was currently on probation in Rutherford County for a drug conviction and that there was an outstanding probation violation warrant in that case. She said the Strong-R assessment characterized Defendant as a high risk based on "attitude behaviors," which she explained meant that the person interviewed was not "accepting of what they did or remorseful for what they did, not accepting that they caused something to happen and then

- 4 -

also just possible maybe negative behaviors." She said the assessment showed that Defendant was medium risk for aggression.

Defendant called Stephanie Fowler, Defendant's sister, as a witness. She said that Defendant had many family members in Williamson County, including four children, that he had attended Centennial High School, and that he had lived in Williamson County most of his life. Ms. Fowler stated that Defendant had been through a lot due to the death of his brother and stepmother in 2019 and that he needed alcohol counseling and treatment. On cross-examination, Ms. Fowler agreed that Defendant had been arrested several times before 2019 and had been "in and out of trouble" since he turned 18. She was aware of Defendant's convictions for resisting arrest, escape, simple possession, and domestic assault on Demi Reed.

Defendant testified that he was 28 years old, divorced, and had four children with Ms. Reed and another child with Samantha Mosely. He said he was convicted of domestic assault on Ms. Reed and placed on probation. He violated an order of protection prohibiting him from being around Ms. Reed, which resulted in a revocation of his probation. At the time he was charged in the Waffle House Case, he was on bond for felony evading arrest out of Maury County and was on probation for a misdemeanor drug possession conviction out of Rutherford County. He explained that these charges in the Waffle House Case occurred after he and two friends went out to celebrate his birthday and became intoxicated. He explained that he got into an altercation with some people at the Waffle House and that he "shot a gun in the air." He admitted that the video recorded by Mr. Holm showed him "holding the gun with [his] arm extended, pointing in the direction of the van full of teenagers leaving the parking lot[.]" He explained that, before the Waffle House shooting, he had a serious alcohol issue, but he had a lot of time to reflect while incarcerated and felt like he could now do without alcohol.

On cross-examination, Defendant admitted that he knew he was not allowed to possess a firearm as a result of the domestic assault conviction in Williamson County. He claimed that the last two bullets he fired "accidentally" hit the SUV. He admitted that there was a "round in the chamber," "the hammer cocked, and the safety was off" when he threatened Mr. Bruce and Ms. O'Connor with the pistol. He admitted he told his probation officer multiple times that he did not have an alcohol problem. He also admitted that, during his incarceration on the charges in the Waffle House Case, he had been in trouble for "threatening other inmates and deputies," assaulting other inmates on two occasions, stealing from other inmates, and refusing to follow orders. He agreed that he pled guilty to felony evading arrest in Maury County after being charged in the Waffle House Case. The judgment forms for Maury County Case No. 29588 show that Defendant was sentenced on October 4, 2022, to concurrent terms of one year for felony evading arrest, six months for resisting arrest, and eleven months and twenty-nine days for driving on revoked third offense, and that he was required to serve six months in jail.

- 5 -

At the conclusion of the sentencing hearing, the trial court sentenced Defendant as follows:

| Waffle House Case | Conviction offense | Sentence term | Alignment |
|---|---|---|---|
| Count 1 | Reckless endangerment of Isaac May | Eleven months and twenty-nine days at 75% service | Consecutive to Counts 8, 9 of the Waffle House Case and Maury County Case 29588 |
| Count 2 | Reckless endangerment of Rebekah Sullivan | Eleven months and twenty-nine days at 75% service | Consecutive to Counts 1, 8, 9 and Maury County Case 29588 |
| Count 3 | Reckless endangerment of A.S. (DOB 07/09/2005) | Eleven months and twenty-nine days at 75% service | Consecutive to Counts 1, 2, 8, 9 and Maury County Case 29588 |
| Count 4 | Reckless endangerment of H.S. (DOB 07/09/2005) | Eleven months and twenty-nine days at 75% service | Consecutive to Counts 1, 2, 3, 8, 9 and Maury County Case 29588 |
| Count 5 | Reckless endangerment of Isaac Arango | Eleven months and twenty-nine days at 75% service | Consecutive to Counts 1, 2, 3, 4, 8, 9 and Maury County Case 29588 |
| Count 6 | Reckless endangerment of C.O. (DOB 12/29/2005) | Eleven months and twenty-nine days at 75% service | Consecutive to Counts 1, 2, 3, 4, 5, 8, 9 and Maury County Case 29588 |
| Count 7 | Reckless endangerment of H.G. (DOB 02/08/2005) | Eleven months and twenty-nine days at 75% service | Consecutive to Counts 1, 2, 3, 4, 5, 8, 9 Maury County Case 29588 *Merged* with Count 6 |
| Count 8 | Aggravated Assault - Weapon | Six years as a Range I Standard offender | Consecutive to Maury County Case 29588 |
| Count 9 | Aggravated Assault - Weapon | Six years as a Range I Standard offender | Consecutive to Count 8 and Maury County Case 29588 |
| Count 11 | Unlawful possession of a weapon with prior domestic | Eleven months and twenty-nine days at 75% service | Consecutive to Counts 1, 2, 3, 4, 5, 6/7, 8, 9 and Maury County Case 29588 |

| Jail Case | Conviction offense | Sentence terms | Alignment |
|-----------|-------------------|----------------|-----------|
| Count 1 | Assault-bodily injury | Eleven months and twenty-nine days at 75% service | Concurrent with Count 2 of Jail Case, consecutive to sentences in Waffle House Case |
| Count 2 | Assault-bodily injury | Eleven months and twenty-nine days at 75% service | Concurrent with Count 1 of the Jail Case, consecutive to sentences in Waffle House Case |

Following the sentencing hearing, the trial court allowed trial counsel to withdraw and appointed new counsel who filed a motion for new trial and, alternatively, a motion for reduction of sentence. Defendant timely appealed after the motions were denied.

## ANALYSIS

On appeal, Defendant raises three issues. He claims the trial court erred: (1) by failing to merge all seven of the reckless endangerment convictions, (2) in applying the enhancement and mitigating factors and imposing an excessive sentence, and (3) in aligning his sentences consecutively.

## Merger

Defendant argues that all seven reckless endangerment convictions arose from "the single conscious choice to fire his gun" and therefore constitute the same offense, requiring merger to avoid double jeopardy violations. The State argues that each of the six fired rounds constitutes a separate unit of prosecution and that the trial court properly imposed six separate sentences while properly merging Count 7 with Count 6. Based upon our examination of the indictment for Counts 1-7 and the proof presented at trial, we determine that Defendant's reckless conduct placed seven persons, each specifically named in a separate count of the indictment, in imminent danger of death or serious bodily injury, and that Counts 1-7 were each a separate unit of prosecution for which the jury could properly convict Defendant.

"It is well settled in Tennessee that, under certain circumstances, two convictions or dual guilty verdicts must merge into a single conviction to avoid double jeopardy implications." *State v. Berry*, 503 S.W.3d 360, 362 (Tenn. 2015).[3] Whether multiple

---

[3] For example, when a jury returns verdicts of guilt on two offenses and one of the verdicts is a lesser-included offense, merger requires the lesser-included offense to be merged into the greater offense. *See*, *e.g.*, *State v. Davis*, 466 S.W.3d 49, 77 (Tenn. 2015) (merger of reckless homicide conviction into the second degree murder conviction). A second example in which merger is required occurs when a jury

convictions violate double jeopardy is a mixed question of law and fact, which appellate courts review *de novo* without any presumption of correctness. *State v. Watkins*, 362 S.W.3d 530, 539 (Tenn. 2012).

*Multiple Punishments*

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, states, "No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Similarly, the Tennessee Constitution guarantees "[t]hat no person shall, for the same offense, be twice put in jeopardy of life or limb." Tenn. Const. art. I, § 10. Both clauses provide three distinct protections: "(1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense." *Watkins*, 362 S.W.3d at 541.

The third category—protection against multiple punishments for the same offense—is at issue here. Claims involving multiple punishments for the same offense "ordinarily fall into one of two categories, frequently referred to as 'unit-of-prosecution' and 'multiple-description' claims." *Id.* at 543. Unit-of-prosecution claims, like we have in this case, involve multiple convictions under a single statute, whereas multiple-description claims involve multiple convictions under different statutes. *Id.* at 544.

*Unit-of-prosecution Claims*

A "unit of prosecution" claim challenges how many separate offenses the State may lawfully charge or punish a defendant for under a single criminal statute based on one course of conduct. *Id.* at 543. "The legislature has the power to create multiple 'units of prosecution' within a single statutory offense, but it must do so clearly and without ambiguity." *State v. Lewis*, 958 S.W.2d 736, 739 (Tenn. 1997).

Courts generally "do not apply the *Blockburger* test when addressing a unit-of-prosecution claim."[4] *State v. Smith*, 436 S.W.3d 751, 768 (Tenn. 2014). Instead, courts must examine the statute under which a defendant was charged to determine "what the

---

returns guilty verdicts on two alternative theories of the same offense. *See*, *e.g.*, *State v. Cribbs*, 967 S.W.2d 773, 788 (Tenn. 1998) (guilty verdicts on both first degree premeditated murder and first degree felony murder merged).

[4] The test announced by the United States Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), involves a two-step process to assess multiple-description double jeopardy claims. The threshold inquiry is whether the alleged statutory violations arise from "the same act or transaction." *Id.* The next inquiry is whether the crimes of which the defendant was convicted constitute the same offense. *Id.*

legislature intended to be a single unit of conduct for purposes of a single conviction and punishment." *Id.* "The intent of the legislature may be discerned by looking to 'the language of the statute, its subject matter, the object and reach of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment.'" *Lewis*, 958 S.W.2d at 739 (quoting *Mascari v. Raines,* 415 S.W.2d 874, 876 (1967)). The rule of lenity requires that any ambiguity or uncertainty in defining the unit of prosecution be resolved in favor of the defendant. *Smith*, 436 S.W.3d at 68.

*Reckless Endangerment Statute*

The reckless endangerment statute provides that "[a] person commits an offense who recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury." Tenn. Code Ann. § 39-13-103(a). "'Reckless' refers to a person who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and justifiable risk that the circumstances exist or will occur." Tenn. Code Ann. § 39-11-302(c).

For a threat of death or serious bodily injury to be "imminent," there must be a "reasonable probability of danger as opposed to a mere possibility of danger." *State v. Payne*, 7 S.W.3d 25, 28 (Tenn. 1999). "[T]he term 'zone of danger' may be employed to define that area in which a reasonable probability exists that the defendant's conduct would place others in imminent danger of death or serious bodily injury if others were present in that zone or area." *Id.* "This requirement of imminent danger mandates that an individual or class of individuals be present in the zone of danger[.]" *Id*. Our supreme court has recognized that, "[w]hen permitted by the facts, the State may prosecute a defendant for criminal acts committed either against individual victims or against the public at large." *State v. Cross*, 362 S.W.3d 512, 519 n. 5 (Tenn. 2012) (citing *Payne*, 7 S.W.3d at 29 n.3). The State must prove that "a person or class of persons were in an area in which a reasonable probability of danger existed." *Payne*, 7 S.W.3d at 28.

Defendant, relying on *State v. Ramsey*, 903 S.W.2d 709 (Tenn. Crim. App. 1995), argues that he "made the single conscious act to fire his gun at other people in a vehicle causing the distinct risk of multiple injuries," and therefore, all reckless endangerment convictions should merge. In *Ramsey*, the defendant was driving and his fiancée was a passenger. The defendant passed another vehicle on a hill but veered back into his lane of travel avoiding an oncoming vehicle containing four passengers. As Mr. Ramsey returned to his lane of travel, he lost control and his vehicle reentered the oncoming lane of travel, striking a pickup truck. The pickup truck driver was slightly injured, but the defendant's fiancée was killed. The jury convicted Mr. Ramsey of criminally negligent homicide and three counts of misdemeanor reckless endangerment, one count related to the driver of the pickup truck that was injured and two counts related to the adult passengers in the

oncoming vehicle he was able to avoid while passing another vehicle. The court in *Ramsey* noted that "the fact that the reckless endangerment statute speaks in terms of a person recklessly engaging in conduct indicates that a course of conduct, comprised of several acts, would constitute the offense." *Id.* at 713. The court further noted that, "although the defendant's reckless conduct victimized more than one person, it does not justify multiple convictions." *Id*. This court held that Mr. Ramsey's driving was a single course of reckless conduct that only supported one conviction of reckless endangerment and reversed two of Mr. Ramsey's reckless endangerment convictions. *Id*. *1. However, the court cautioned that "[w]e need not fashion a blanket rule that provides that a defendant's continuous operation of a vehicle may *only* result in one act of reckless endangerment under the statute. Many scenarios could be created where such a rule would not be prudent." *Id*. at *13 (emphasis in original).

In *State v. Hazeltine*, No. M2003-01292-CCA-R3-CD, 2004 WL 1114587, at *1 (Tenn. Crim. App. May 17, 2004), the defendant drove his car toward two men standing in a parking lot outside a bar but stopped shortly before hitting them. The defendant then backed up, drove toward the men again, and hit a third man who had just left the bar. *Id*. The jury convicted the defendant of three counts of aggravated assault and three counts of reckless endangerment, and the trial court merged the reckless endangerment convictions with the aggravated assault convictions. *Id*. On appeal, one issue raised by the defendant was that the trial court erred in not consolidating the three counts of reckless endangerment. This court, citing *Ramsey*, determined that the defendant committed "one continuous act, a single course of conduct" that supported only one conviction of reckless endangerment even though "the conduct victimized more than one person" and reversed two of the reckless endangerment convictions. *Id*. at *11.

In *State v. Bengtson*, No. E1999-01190-CCA-R3-CD, 2000 WL 1456926, at *4 (Tenn. Crim. App. Oct. 2, 2000), a bounty hunter pointed a loaded shotgun at three individuals seated in a vehicle. After the State agreed on appeal that the defendant's three convictions for felony reckless endangerment should be merged into one, this court, citing *Ramsey*, determined there was one course of conduct and vacated two of the convictions. *Id*.

In *State v. Kennedy*, No. 01C01-9601-CC-00038, 1997 WL 137426, at *1 (Tenn. Crim. App. Mar. 27, 1997), the defendant was convicted of two counts of felony reckless endangerment resulting from an attempt to evade arrest during which he almost hit a police vehicle head-on and a short time later ran a red light colliding with a truck. This court distinguished *Ramsey* and affirmed the two convictions because the second act of reckless endangerment occurred two blocks from the first and significant time elapsed between the two acts. *Id*. at *3.

- 10 -

In cases involving the discharge of a firearm where multiple victims were in the zone of danger, however, opinions of this court have determined that the evidence was sufficient to support multiple convictions of reckless endangerment. In *State v. Smith*, No. M2024-01336-CCA-R3-CD, 2025 WL 2612757, at *1 (Tenn. Crim. App. Sept. 10, 2025), *perm. app. filed*, the defendant fired multiple rounds at three adults standing in the yard and into a residence occupied by six children. This court affirmed the defendant's convictions, including convictions for eight counts of reckless endangerment for specific victims named in separate counts of the indictment. In *State v. Ferguson*, No. W2019-02199-CCA-R3-CD, 2021 WL 1697895, at *1 (Tenn. Crim. App. Apr. 29, 2021), *perm. app. denied* (Tenn. Aug. 9, 2021), the defendant was convicted of one count of second degree murder and three counts of reckless endangerment of specific victims named in separate counts of the indictment when the defendant fired five rounds into a vehicle occupied by four passengers. This court affirmed the convictions noting that the four passengers "were most certainly placed in "imminent danger of death or serious bodily injury." *Id*. at *10. In *State v. Clift*, No. M2021-00425-CCA-R3-CD, 2022 WL 1446786, at *1 (Tenn. Crim. App. May 9, 2022), *perm. app. denied* (Tenn. Sept. 28, 2022), this court affirmed the defendant's convictions for one count of first degree premeditated murder and three counts of reckless endangerment resulting from the defendant firing multiple rounds into a parked car occupied by two adults and two children.

We recognize that in *Smith*, *Ferguson*, and *Clift*, the appellants claimed there was insufficient evidence to support multiple reckless endangerment convictions and that they did not raise, nor did this court address, merger or double jeopardy. Nevertheless, these cases clearly establish that a defendant who "recklessly engages in conduct that places" more than one person "in imminent danger of death or serious bodily injury" can be convicted of more than one count of reckless endangerment under Tennessee Code Annotated section 39-13-103(a).

This conclusion is supported by discussions by our supreme court in *Payne* and *Cross*. In *Payne*, our supreme court considered whether the State could name the "public at large" as the victim in an indictment for reckless endangerment. In concluding that it could, the court discussed that "the State could have pursued multiple indictments for reckless endangerment naming Officers Finchum and Jones, and motorist Noel Alhie as victims." *Id*. at 29 n. 3. In *Cross*, our supreme court examined whether dual convictions for evading arrest and reckless endangerment with a deadly weapon violated double jeopardy principles. The court first determined that the charges against Mr. Cross "arose from the same act or transaction," i.e., a high-speed chase involving a motorist who was attempting to avoid arrest. *Cross*, 362 S.W.3d at 519. The court next examined "the charging instrument and the relevant statutes" to determine whether the charges arose from

- 11 -

discrete acts *or* involved multiple victims. *Id*. at 519 (emphasis added).[5] The court noted that, even though there were "a number of distinct potential victims," the State framed the indictment as one "against the general public as a collective whole" without separately identifying or otherwise differentiating the victims. *Id*. In footnote 5, the court stated:

> In this case, the State indicted Mr. Cross in count two for creating a risk of injury or death "to innocent bystanders or third parties." Similarly, count three of the indictment alleged that Mr. Cross "placed or may have placed another person in imminent danger of death or serious bodily injury." The State could have pursued multiple offenses for each of the different individuals who were put in jeopardy by Mr. Cross's conduct. It did not.

*Id*. at 520 (citing *Payne*, 7 S.W.3d at 29 n. 3).

### *The Indictments, Jury Charge, and Verdict Forms*

In this case, the State indicted Defendant in Counts 1-7 for intentionally and knowingly attempting to kill seven occupants seated inside the SUV. Each of the seven counts identified a specific victim by name, if an adult, or by initials and date of birth, if a juvenile. For example, Count 3 stated: Defendant "intentionally and knowingly did attempt to kill a juvenile, A.S. (DOB 07/29/2005), in violation of Tennessee Code Annotated sections 39-12-101 and 39-13-210, a Class B felony." The indictment was read to the jury at the beginning of the trial and a copy of the indictment was provided to jury for their deliberation.

The trial court charged the jury on the law applicable to attempted second degree murder and the lesser-included offenses of attempted voluntary manslaughter and misdemeanor reckless endangerment in Count 1. For Counts 2-7, the court explained that the jury had "already been instructed on the law for [a]ttempted [s]econd [d]egree [m]urder in Count 1," and "[t]he only difference with respect to [Count 1] is the *existence of a different victim*." (emphasis added). The jury was instructed that the "crime charged in each count of the indictment is a separate and distinct offense[,]" and the jury was provided the jury charge and a separate verdict form for each count. The State framed Counts 1-7 of the indictment to allege that Defendant attempted to murder a distinct and specifically named person. Based upon the indictment and facts proven at trial, the jury found Defendant guilty of the lesser-included offense of reckless endangerment on each of the seven counts.

---

[5] *Cross* involved a multiple-description claim, i.e. multiple punishments for the same offense under different statutes, as opposed to a unit-of-prosecution claim as we have in this appeal.

In *State v. Irvin*, 603 S.W.2d 121, 122 (Tenn. 1980), while driving under the influence of alcohol, Mr. Irvin crossed the center line of a highway and collided with an oncoming automobile killing four passengers in the other vehicle and one passenger in his vehicle. Defendant was convicted of four counts of second degree murder and one count of voluntary manslaughter. The issue on appeal was "whether multiple convictions for homicide may stand where more than one death results from a single automobile accident." In affirming the multiple convictions, our supreme court explained that "[a]s a general proposition, with few exceptions, in crimes against the person, when contrasted with crimes against property, there are as many offenses as individuals affected." *Id.* at 124 (quoting *Vigil v. State*, 563 P.2d 1344, 1352 (Wyo. 1977)). Reckless endangerment, like the homicide offenses in *Irvin*, is a "crime against the person," and therefore "as a general proposition," there can be as many offenses as individuals who were placed in imminent danger of death or serious bodily injury by a defendant's reckless conduct.

"The merger of convictions is not a matter of discretion but of law, determined by whether multiple convictions violate double jeopardy principles." *Watkins*, 362 S.W.3d at 556. Here, Counts 1-7 of the indictment each constituted a unit of prosecution under Tennessee Code Annotated section 39-13-103(a) because each count involved a different victim. *See Smith*, 2025 WL 2612757, at *1; *Ferguson*, 2021 WL 1697895, at *1; and *Clift*, 2022 WL 1446786, at *1. There is no double jeopardy violation and, therefore, no basis to merge Counts 6 and 7, and the trial court erred by merging those counts. Upon remand, the trial court should amend the judgment forms to correct the improperly merged counts.

**Length of Sentence**

Defendant contends that the trial court erred by applying enhancement factor (10), that he had no hesitation about committing a crime when the risk to life was high. He also asserts that the trial court erred by declining to apply several mitigating factors. The State responds that the trial court did not abuse its discretion.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c).

To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence. Tenn. Code Ann. § 40-35-210(e); *State v. Bise*, 380 S.W.3d 682, 706 (Tenn. 2012). Although the trial court should consider enhancement and mitigating factors, such factors are advisory only. *See* Tenn. Code Ann. § 40-35-114; *see also Bise*, 380 S.W.3d at 698 n. 33, 704; *State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). We note that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." *Carter*, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *Id*. at 343. A trial court's "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. "[Appellate courts are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Carter*, 254 S.W.3d at 346.

When the record clearly establishes that the trial court imposed a sentence within the appropriate range after a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *Bise*, 380 S.W.3d at 707. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

In this case, the trial court stated on the record that it had considered the evidence presented at trial in the Waffle House Case, at the guilty plea submission in the Jail Case, at the sentencing hearing, and in the presentence report. The court stated that it had also considered the principles of sentencing, "the nature and characteristics of the criminal conduct involved," the evidence concerning mitigating and enhancement factors, the "statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee," and Defendant's testimony.

A person commits Class C felony aggravated assault who intentionally or knowingly commits assault involving the use or display of a deadly weapon. Tenn. Code Ann. § 39-13-102(a)(1)(A)(iii), (e)(1)(A)(ii). The range of punishment for a Range I offender convicted of a Class C felony is not less than three nor more than six years. Tenn. Code Ann. § 40-35-112(a)(3).

The trial court found that six enhancement factors applied: Defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; the offense involved more than one victim; Defendant, before trial, failed to comply with the conditions of a sentence involving release in the community; Defendant possessed or employed a firearm during the commission of the

- 14 -

offense; Defendant had no hesitation about committing a crime when the risk to human life was high; and at the time the felony was committed, Defendant was released on bail for a felony and was later convicted of that felony and Defendant was released on probation. Tenn. Code Ann. § 40-35-114(1), (3), (8), (9), (10), (13)(A), (C). The court found that none of the mitigating factors in Tennessee Code Annotated section 40-35-113 applied.

The trial court noted that, with the exception of factor number (10), Defendant conceded the other enhancement factors "are present in this case."[6] The court specifically found that:

> The evidence shows that the Defendant did not hesitate to employ a firearm in multiple ways. One, by pulling the trigger six times, discharging six rounds in the direction of a van, loaded with teenagers who were fleeing the parking lot, and also brandishing the firearm and threatening two victims in the automobile[.]

The trial court stated that Defendant "had taken his illegally possessed firearm with him into the Waffle House and did not hesitate to employ the firearm under circumstances where there was absolutely no justification." The court also found that "Defendant was in release status on bond" and "was also in release status on probation [in] not one, but two separate counties for unrelated offenses" at the time that he committed these offenses.

The trial court considered and placed on the record the factors it considered and the reasons for imposing the sentences. Accordingly, we examine the court's in-range sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *Bise*, 380 S.W.3d at 707. Because the sentences were imposed after proper application of the purposes and principles of sentencing and did not wholly depart from the Sentencing Act, neither the alleged misapplication of the enhancement factor that Defendant had no hesitation about committing a crime when the risk to human life was high nor the court's decision not to apply mitigating factors would invalidate the sentence. *Id.* at 706. The court did not abuse its discretion by imposing within-range sentences of six years for aggravated assault.

---

[6] We note that one victim is named in each count of the indictment in the Waffle House Case, and none of the indicted offenses involve more than one victim. Although not specifically raised by the parties, the trial court misapplied the multiple victim enhancement factor set out in Tennessee Code Annotated section 40-35-114(3). *See State v. Imfeld*, 70 S.W.3d 698 (Tenn. 2002) (holding that "multiple victims" sentence enhancement factor was inapplicable where each count involved a different specific, named victim). However, the trial court's misapplication of this enhancement factor does not invalidate the sentences because the in-range sentences did not "wholly depart[]" from the Sentencing Act, and multiple other enhancement factors were properly applied. *Bise*, 380 S.W.3d at 706.

## Discretionary Consecutive Sentences

Defendant claims that the trial court erred in imposing consecutive sentencing, arguing that the trial court failed to engage "in the appropriate analysis" of the factors for consecutive sentencing set out in Tennessee Code Annotated section 40-35-115(b). The State argues that the court properly aligned the sentences consecutively.

Tennessee Rule of Criminal Procedure 32 provides:

(c)(1) Multiple Sentences from One Trial. If the defendant pleads guilty or is convicted in one trial of more than one offense, the trial judge shall determine whether the sentences will be served concurrently or consecutively. The order *shall specify the reasons* for this decision and is reviewable on appeal. Unless it affirmatively appears that the sentences are consecutive, they are deemed to be concurrent.

(Emphasis added).

In *State v. Pollard*, 432 S.W.3d 851, 859 (Tenn. 2013), the Tennessee Supreme Court expanded its holding in *Bise* to trial courts' decisions regarding consecutive sentencing. "So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Id.* at 862 (citing Tenn. R. Crim. P. 32(c)(1)).

If a defendant is convicted of more than one criminal offense, the court shall order sentences to run consecutively or concurrently. Tenn. Code Ann. § 40-35-115(a). The term "criminal offenses" encompasses both felony and misdemeanor offenses, and a trial court may align both felony and misdemeanor sentences for multiple convictions consecutively if the court finds by a preponderance of the evidence any one of the criteria in Tennessee Code Annotated section 40-35-115(b) is applicable. *See* Tenn. Code Ann. § 40-35-302(b) (stating that misdemeanor sentences shall be imposed consistent with the purposes and principles of this chapter); *see also State v. Noble*, No. 02C01-9701-CC-00060, 1998 WL 32681, at *3 (Tenn. Crim. App. Jan. 30, 1998) (applying factors in Tennessee Code Annotated section 40-35-115(b) and factors in *State v. Wilkerson*, 905 S.W.2d 933, 939 (Tenn. 1995), to misdemeanors); Tenn. Op. Atty. Gen. No. 98-150, Aug. 12, 1998, 1998 WL 543973 (stating that a court may not impose consecutive sentences for misdemeanors under Tennessee Code Annotated section 40-35-302 unless the requirements of § 40-35-115, and if applicable, the guidelines set forth in *Wilkerson* are met).

The statutory factors governing the alignment of sentences for a defendant convicted of multiple offenses are codified at Tennessee Code Annotated section 40-35-115(b), which provides, in pertinent part:

> (b) The court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:
>
> . . . .
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
>  . . . .
>
> (4) The defendant is a *dangerous offender* whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;
>
> . . . .
>
> (6) The defendant is sentenced for an offense committed while on probation[.]

Tenn. Code Ann. § 40-35-115(b)(1), (2), (6) (emphasis added).

Any one of the grounds set out in Tennessee Code Annotated section 40-35-115(b) is "a sufficient basis for the imposition of consecutive sentences." *Pollard*, 432 S.W.3d at 862 (citing *State v. Dickson*, 413 S.W.3d 735, 748 (Tenn. 2013)).

*Extensive Record of Criminal Activity*

Our supreme court recently held that a trial court should consider the following non-exclusive factors when finding that a defendant has an extensive record of criminal activity:

(1) The amount of criminal activity, often the number of convictions, both currently before the trial court for sentencing and prior convictions or activity;

(2) The time span over which the criminal activity occurred;

(3) The frequency of criminal activity within that time span;

(4) The geographic span over which the criminal activity occurred;

(5) Multiplicity of victims of the criminal activity; and

(6) Any other fact about the defendant or circumstance surrounding the criminal activity or convictions, present or prior, that informs the determination of whether an offender's record of criminal activity was considerable or large in amount, time, space, or scope.

*State v. Perry*, 656 S.W.3d 116, 129 (Tenn. 2022) (footnotes omitted).

The presentence report shows, that at the time of the offenses in the Waffle House Case, Defendant was released on bail in Maury County for felony evading arrest, resisting arrest, and driving on a revoked license; he had four prior misdemeanor convictions in Williamson County, including a conviction for domestic assault and escape; he had a conviction in Franklin County for possession of drugs; and he was on probation out of Rutherford County for possession of drugs. Defendant's probation has been revoked multiple times, including probation revocations for his sentences on domestic assault, escape, and simple possession.

In the Waffle House Case, there were nine separate victims. We note that, in *Perry*, our supreme court stated that a finding of an extensive criminal history may be based solely upon the offenses for which the defendant is being sentenced. *Id.* at 131 ("[W]e clarify that a defendant need not have prior criminal convictions or activity to qualify as an offender whose record of criminal activity is extensive for purposes of section 40-35-115(b)(2)"). The court did not err by applying factor -115(b)(2).

### *Dangerous Offender*

Before a trial court may impose consecutive sentences on the basis that a defendant is a dangerous offender, the trial court must also find "that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences . . . reasonably relate to the severity of the offenses committed." *Wilkerson*, 905 S.W.2d at 939. In order to limit the use of the "dangerous offender" category to cases where it is warranted, our supreme court has stated that the trial court must make specific findings about "particular facts" which show that the *Wilkerson* factors apply to the defendant. *State v. Lane*, 3 S.W.3d 456, 461 (Tenn. 1999).

The trial court found that Defendant was a dangerous offender who showed little or no regard for human life and had no hesitation in committing crimes that pose a high risk to human life. The court observed that Defendant committed the offenses in the Jail Case

- 18 -

while serving pretrial confinement for the offenses in the Waffle House Case. The court described the offenses in the Waffle House Case as aggravated, noting that Defendant

> fired six nine-millimeter bullets from a semiautomatic Glock pistol at an SUV filled with fleeing teenagers. Two rounds struck the vehicle, and one injured one of the teenagers. Defendant then returned to Mr. Bruce's vehicle and pointed a loaded weapon, with the trigger cocked and the safety off, at both the passenger and the driver.

The trial court concluded that an extended period of confinement is necessary to protect society from Defendant's unwillingness to lead a productive life and that the total sentence reasonably relates to the severity of the offenses for which Defendant stands convicted. The trial court did not err in finding Defendant to be a dangerous offender or by applying factor -115(b)(4).

### Offense Committed While on Probation

Defendant admitted that he was on probation out of Rutherford County when he committed the Waffle House Case offenses. Thus, the court did not abuse its discretion in aligning the felony or the misdemeanor sentences consecutively.

### Mandatory Consecutive Sentencing

Tennessee Rule of Criminal Procedure 32(c)(3)(C) provides that consecutive sentences are specifically required for "a felony committed while a defendant was released on bail and the defendant is convicted of both offenses[.]" Defendant testified at the sentencing hearing that he was released on bail for felony evading arrest in Maury County when he committed the offenses in the Waffle House Case and that he was convicted of felony evading arrest before the trial in the Waffle House Case. The trial court properly aligned the two six-year sentences for aggravated assault consecutively to the Maury County felony sentence.

### Conclusion

We reverse the trial court's merger of Count 7 into Count 6 and remand for the trial court to enter an amended judgment omitting the merger language in Count 7 and aligning the sentence in Count 7 concurrently with Count 6. In all other regards, we affirm the judgments of the trial court.

_s/ Robert L. Holloway, Jr._
ROBERT L. HOLLOWAY, JR., JUDGE